# THE SUPREME COURT

OF THE

## STATE OF ILLINOIS,

### NOVEMBER TERM, 1857, AT MOUNT VERNON.

| 19 | 21 |
|---|---|
| 209 | 108 |

STEPHEN R. ROWAN and NANCY ANN, his Wife, Complainants, Appellants, v. JOHN REED, Junior, JOSEPH BOWLES AND WIFE et al., Appellees.

#### APPEAL FROM GALLATIN.

Where a petition for partition is filed, and a part of the claimants file a bill in chancery asking a commission of partition, making especial allowances for certain expenditures made to improve the estate sought to be partitioned, it was shown that the object of the expenditure was not to benefit the estate, and that the parties who made the expenditures had enjoyed the fruits of them; *Held*, that the enjoyment was a fair set off to the improvements made, and that there were no equities presented requiring especial relief.

THE appellants filed their bill at the October term, 1855, of the Gallatin Circuit Court, against the appellees, alleging that John Reed, Sr., the father of complainant, Nancy Ann, died seized of certain real estate, described in complainant's bill, leaving Margaret Reed, his widow, and the complainant, Nancy Ann, and John Reed, Jr., children of the said John Reed, Sr., and Alexander Reed, grandson, and Rebecca Bowles, the granddaughter of said John Reed, Sr., who is now the wife of Joseph Bowles, his only heirs at law, him surviving, to whom the said real estate descended, subject to the dower of the said Margaret Reed, widow.

That said Alexander Reed afterwards died, leaving Mary Ann McCallen, his widow, who is the wife of Andrew McCallen, and Mary, Josephine and Andrew J. McCallen, the half-brother and half-sisters of said Alexander Reed, heir and heiresses at law,

to whom his interest in the lands of John Reed, deceased, immediately descended, and vested, in the proportions following, viz.: To the complainants, in right of the said Nancy Ann, one fourth; to the said Joseph Bowles and wife, in right of the said Rebecca, one-fourth; to the said John Reed, Jr., one-fourth; to the said Andrew and Mary Ann McCallen, one undivided tenth part, and to the said Mary, Josephine and Andrew J. McCallen, one-twentieth part of said premises, each; the said Mary Ann, Josephine, Mary and Andrew J. being seized of one undivided fourth of said premises, as heirs of said Alexander Reed; the said Mary, Josephine and Andrew J. being infants.

That a brick dwelling house was built by complainant, Stephen, upon the homestead farm of the said John Reed, Sr., deceased, at the request of the said Margaret Reed, widow, whose dower had never been set apart to her, and who occupied the said homestead farm after the death of her husband until the filing of this bill, and that the said brick house was indispensable to the comfort of the said Margaret Reed, widow, the dwelling house that was on the homestead of the deceased being in a dilapidated condition, and unfit for her to live in.

That said Rowan also cleared forty acres of ground on said farm, at an expense of $200, and also had 200 rods of ditching done on said farm, at a cost of $60, and enhanced the value of the inheritance to the extent of $1,060, or more; and also made an improvement on the Nettle Bottom farm, part of the real estate of which said Reed died seized, worth about $50; said improvements being a double log cabin, and, at the time of filing complainants' bill, occupied by Andrew McCallen, one of the defendants therein; all which said improvements were made with the approbation and knowledge of the defendants, and were necessary and proper, and indispensable to the enjoyment of the said estate; which said improvements and expenditures complainants claim that the defendants should, in equity, contribute towards liquidating, before partition be made, or that the portion of the said real estate, on which said improvements were made, should be set apart to complainants, without account for the enhanced value thereof, but which equitable contribution the said defendants refused to make, and, instead of so doing, have presented their petition, on the common law side of the court, praying a legal partition of the said real estate, without any regard to the equities of complainants therein.

The complainants prayed that a commission of partition be issued out of chancery, to assign the dower of the said Margaret Reed, widow, in the said lands, and to make an equitable partition thereof, among the complainants and the other parties in interest, and that the complainant, Stephen, be allowed what

was right for his expenditures as aforesaid, or that there might be allotted him and his said wife, for their share of said estate, that portion of the lands of the said Reed, deceased, on which said improvements were made, and that the said Joseph and Rebecca Bowles, and Andrew and Mary Ann McCallen, and Mary, Josephine and Andrew J. McCallen, might be made defendants' guardians *ad litem*, appointed for said infants, and that an injunction issue restraining said defendants from proceeding at law with said suit for partition.

This is the substance of the bill sworn to by complainant, Stephen R. Rowan, as required by law, and the defendants called upon to answer the bill without oath.

At the same term of court, separate answers were filed by Joseph Bowles and wife, and Andrew McCallen and wife—the answer of the said McCallen and wife being, in effect, on behalf of the minors as well as himself and wife, but no answer appears to have been filed, in form, for or on behalf of the minor children of said Andrew and wife.

The answers of Bowles and wife deny all the equities of complainants, and deny that the building the house was necessary to the occupancy of the homestead, but admit that they have filed their petition for partition at law, and insist upon it, as a defense to the relief sought for, that complainants enjoyed the profits of the home farm, and occupied the brick house, which, they aver, was built for the benefit of the widow and Rowan, and not for their benefit, and more than compensated complainants for any outlay by complainant, Stephen—also deny that said improvements were made by their consent, etc., or that they knew of said improvements, and also allege that the defendants, Mary, Josephine and Andrew J. McCallen, were minors, and could not consent, and that they have never received any rents or profits from the estate.

The answers of McCallen and wife were to the same effect—to which answers a general replication was filed.

The defendants gave complainants notice that they would present their answers, denying the allegations in complainants' bill, together with affidavits, and filed the affidavits of the following persons, viz. : Aaron R. Stout, James Beasley, and Alexander Kirkpatrick ; the complainants having also, in support of their bill, filed the affidavits of the following named persons, viz.: Henry Gill, H. H. Thomasson and Margaret Reed ; and, at the October term, A. D. 1855, of the Circuit Court of Gallatin county, the complainants moved for an injunction, as prayed for in their bill, and, at a court, held on the 1st November, 1856, the said Circuit Court, after the cause being submitted on bill, answers, replication, and the affidavits on file, on behalf

of complainants and defendants, overruled the motion and dismissed the bill at complainants' cost.

Whereupon the complainants appealed to this court, which appeal was allowed, by consent of parties, without giving bond, the cause to stand for a hearing at the ensuing term of the Supreme Court, to be held in November, 1856, the same as though thirty days had intervened between the time of making said appeal and the sitting of said Supreme Court.

The said affidavits, also, by agreement, were to be considered as depositions.

Reversal of decree to operate as an injunction, according to prayer of bill.

Proceedings at law to be stayed until the further order of the court therein.

And now the complainants seek to reverse the decree of the Circuit Court of Gallatin county, for the following errors assigned upon the record:

1st. That the court erred in refusing complainants' application for an injunction.

2nd. Because the court erred in dismissing complainants' bill, at their cost, and

3rd. Because the court erred in overruling said motion for an injunction, dismissing said bill, and in not granting the relief prayed for.

The following are the affidavits submitted:

*Aaron R. Stout*, for the defendants, deposed, that he has resided in Shawneetown for the last sixteen years, and was personally acquainted with John Reed, senior, deceased, who died about February, 1847; that at the time of his death he resided about two miles from Shawneetown, where he had resided ever since affiant moved to the county. There was cleared and in cultivation, at the time of the death of Reed, about one hundred and eighty-five acres of land on the farm where Reed-lived, and on adjoining fields; that the use and occupancy of the farm, annually, since Reed's death, has been reasonably worth twelve bushels of corn to the acre, and the average value and price of corn since Reed's death up to the present time, is about twenty-five cents per bushel. He further states, that he was employed by Rowan to erect a brick house on the farm, which he did, and that the brick work and the materials for it were worth about three hundred dollars, and the entire cost of the house would not exceed six hundred dollars; that after the house was built, Rowan moved into it and lived in it about three years, and some of that time cultivated a part of the farm, and since he moved into the house, he has cultivated more or less of the farm each year up to the present time (8th Nov., 1855). He further states, that Rowan had cut about eighteen oak trees, and made

posts of them for twenty-four acres of land of his own; that oak trees were worth $1.50 each. Rowan told him he was getting some posts for his fence off the "Reed land."

*James Beasley* states, that he resides in this (Gallatin) county, and has, continuously, within three-quarters of a mile of the dwelling-house of the "Home farm" of John Reed, senior, deceased, ever since the summer of 1847; that Margaret, the widow of John Reed, senior, deceased, has resided upon the Home farm ever since the death of her husband; that at the time of his death there was cleared and in cultivation about one hundred and eighty-five acres, including the dwelling; that there was then, in 1847, and is yet, a good orchard of about ten acres, principally apple trees; that a fair rent for the improved land would be twelve bushels of corn to the acre each year since Reed's death, and the average price of corn would be twenty-five cents per bushel; that Rowan cultivated thirty acres of the one hundred and eighty-five acres for the years 1849, '50 and '51; that another thirty acres, part of the one hundred and eighty-five acres, was cultivated by Rowan for the years 1854 and '55, and other five acres of the same, Rowan cultivated for six years, and rented the same five acres to one Overton, who paid Rowan rent; this since the death of Reed; that the two fields of thirty acres each, cultivated by Rowan, and rented by him as stated, were reasonably worth twelve bushels of corn per acre for each year, and corn worth, in the ear, on the places, twenty-five cents per bushel; that Mrs. Reed, the widow, and John Reed, junior, together, have cultivated twenty acres of the one hundred and eighty-five acres, for eight years, and other twenty acres of the same for nine years, being ever since Reed's death, and other four acres of same for nine years, being ever since the death of Reed, and other five acres of the same for the year 1855; that the rent of these several tracts was worth twelve bushels of corn to the acre; the remainder of the one hundred and eighty-five acres has been rented to different persons ever since Reed's death, by Margaret Reed principally, and some by Rowan. The names of the tenants to whom the land was rented are given by the affiant. He further states that Rowan cleared about ten or twelve acres of woodland adjoining the one hundred and eighty-five acres, and about two miles from the centre of Shawneetown; that the principal part of the wood thus taken off was hauled to and sold by Rowan in that town, and he used some of it himself; that the timber on the land was well worth the labor and expense of clearing it; affiant offered to clear it for the wood, and Rowan refused, and said that Bowles had been cutting up about the land, and that he would not give any one leave to cut wood on it but himself. He fur-

3

ther states, that Rowan and his family resided on the "Home farm" in the house with Mrs. Reed in 1847, and until the brick house was built, about five or ten feet from the old dwelling-house, and then Rowan and his family moved into the brick house, and continued to live in it about four years, the widow, Mrs. Reed, continuing in the old dwelling-house until Rowan moved out of the brick house, and she moved into it; that whilst Rowan resided on the farm he cleaned out a kind of branch on it, and changed the direction of the water on the land he cultivated, and that the ditch thus cut by him is now of no value to the farm. He also states, that he heard Rowan say, two or three times, that the old Doctor had been living in the old house a long time, and that it was not fit for the old lady to live in; that he intended to build a house purposely for her to live in, and that if the heirs did not help pay for it, they could go to hell.

*Alexander Kirkpatrick* deposes, that he was the guardian of Rebecca Reed, now Rebecca Bowles; that she resided with affiant at the time of Reed's death, and for three years thereafter; that he was not consulted about building a brick house on the old Reed "Home farm," nor did he give any consent that a house should be built on it, and is confident that Rebecca did not consent; if she had been consulted, he would have known it. He further states, that he and Rebecca were opposed to Rowan's moving on to the farm, and to his cultivating any part of it, or exercising any acts of ownership or control over the "Home farm."

In another affidavit, Kirkpatrick gives the ages of Rebecca Bowles, and of the children of McCallen, showing that they were under age.

On the part of complainants,

*Henry Gill* deposes, that he was raised in Gallatin county, and resided within three-fourths of a mile of the late Dr. Reed's for twenty-five years next before his death, and that during a great portion of the time he worked more or less upon the "homestead farm," on which Reed died in February, 1847; that his widow has occupied it ever since; that at Reed's death the dwelling-house was in a wretched state of repair, the timber with which the cellar had been walled was decayed, and a bad smell came up through the floor; half of the building, being an addition, was much decayed, and liable to fall at any time, so much so that it was not good economy to repair it. Rowan moved to the premises, and soon after, in 1848, erected a brick house, 44 by 18 or 19 feet wide, with an eight-foot hall through it, making two good rooms and a hall; house lathed and plastered, panel doors, etc., and could not have been built at that

time for less than eight hundred dollars, and thinks the premises were increased in value that amount by the building. Rowan also built a barn and shed on the place, worth seventy-five dollars, which were necessary, and threw up a "levee," by means of a ditch in the orchard, which gave to the waters from the different hollows, etc., a proper flow, and was a very essential improvement to the farm; that it was worth twenty cents per rod, and is about a mile long, and is indispensable to portions of the farm. Rowan also cleared a good deal of the land. At the time of Reed's death there was not more than one hundred and twenty acres of cleared land on the "homestead farm" fit for cultivation, and that Rowan cultivated, from time to time, portions of the farm; understood he cultivated it as tenant, and paid rent to the widow; he frequently leased, as agent or attorney, and attended to the collection of rents for Margaret Reed. He also made other improvements on the estate of Dr. Reed outside of the homestead, the extent or value of which he cannot state.

*H. H. Thomason* concurs with Gill, except that he thinks there were more than a hundred and twenty acres of "tillable" land cleared on the homestead farm at the time of Reed's death.

*Margaret Reed* deposes that she is the widow of John Reed, deceased, who died on the 6th February, 1847; that she has resided on the farm on which he resided at the time of his death from thence to the present time, not having been absent from it but for a day or two at a time; speaks of the condition of the dwelling-house as in a state of decay, and half of it in danger of falling at the time of her husband's death; that he spoke of leaving it and building upon another farm; that after her husband's death, Rowan and his family moved to the homestead at her request and that of her son John. Rowan repaired the old house by blocking up portions of it, plastering portions of it, and putting on a new clapboard roof; in 1848 he built a comfortable one-story brick dwelling, with two rooms, etc., and delivered the house up to affiant, the old house being considered no longer safe or comfortable, and she is at this time residing in the brick house. She states she was advised by counsel, that as widow she was entitled to the homestead farm from the death of her husband until her dower was assigned, and that she has claimed and controlled the homestead from the year 1847 to this time; there was under fence in all about one hundred and twenty-three acres, some of which was woods pasture; that the fences were much out of repair. Rowan cultivated portions of the land, but as her tenant, except where he cleared up and put in addition, she charged no rent; that she has claimed, and will claim, all the rents arising from the place until her dower is

assigned, and that, considering the repairs she has been compelled to make, they have barely supported her; that she has been blind for the last twenty-three years, and further says not.

NELSON & JOHNSON, for Appellants.

J. OLNEY and W. THOMAS, for Appellees.

BREESE, Justice, delivered the opinion of the court:

The claim set up by the complainants for the interposition of a Court of Equity, seems, from the proofs submitted, both for and against the injunction, not to be well founded.

Without going into the question of the right of one tenant in common, or coparcener, to call upon his co-tenants to contribute for valuable improvements made, and necessary for the enjoyment of the estate, and to which they have assented, or to have, under a partition process, that portion of the land improved by one of them allotted to him, or under what circumstances he may take possession and make improvements, we will simply advert to some prominent facts in this case, as they appear from the affidavits.

James Beasley, on the part of the defendants, deposes, that Rowan, one of the complainants, said to him on several occasions, that the old house on the "Home farm" was not fit for the old lady—the widow of Dr. Reed and the mother of Mrs. Rowan—to live in; that he intended to build a house purposely for her to live in, and if the heirs—who are these defendants—did not help pay for it, they could go to hell.

Mrs. Reed, the widow, deposes, that at the time of her husband's death, in Feb., 1847, the dwelling-house—"the homestead"—was in a dilapidated condition, and unsafe to live in, and that complainant, Rowan, in 1848, built the brick house and delivered it up to her.

It appears further from the affidavits, that on the completion of this house, complainants went into it and occupied it four years, the old lady, Mrs. Reed, remaining in the old house all that time.

Mrs. Reed further states, that Rowan was her tenant and acted as her agent, but does not say he ever paid any rent. She was tenant in dower, and claimed the rents.

Now it is quite apparent that the defendants cannot be chargeable for this improvement, or be bound to contribute anything towards it, as there is no proof that they advised it or assented to it, and there being full proof that it was not made for the benefit of the estate, but solely for the use and enjoy-

ment of the widow, in which the complainants exclusively participated for four years.

The use of the improved land on this home farm, which complainants also enjoyed, without paying any rent, for four or more years, is a fair set-off to any additions he may have made to it by taking in and subjecting to cultivation such portions of wild land upon it as he cleared and fenced, and for the ditch he made to give a proper direction to the brook. We have not made a precise calculation, in dollars and cents, of either, but the facts in the case show it was a valuable estate which they enjoyed, to the exclusion of the defendants, who had an interest in it greater, when combined, than their own.

This enjoyment of the estate by complainants, is, in our judgment, ample compensation for all the improvements made, and no equities exist, which we can notice, favorable to their cause.

The decree of the Circuit Court, refusing the injunction and dismissing the bill, is affirmed.